Rolfe C. Harper III appeals from the Mobile Circuit Court's order granting a motion filed by Brown, Stagner, Richardson, Inc. ("BSR"), to dismiss Harper's declaratory-judgment action.
 Facts
In December 1995, BSR entered into a contract with an entity doing business as "Harper Sales" regarding food brokerage in the Mobile area. At the time, Rolfe C. Harper III, a resident of Mobile County, held himself out as the president of Harper Sales.[1] In November 1996, BSR sued Harper Sales in the Jefferson Circuit Court, alleging breach of contract. In July 1998, a jury returned a verdict in favor of BSR for $113,115.34. Harper, individually, was not a party to the action.
In December 2000, during a postjudgment deposition taken of Harper for the purpose of attempting to collect the judgment, BSR's attorney learned that Harper Sales was the name under which Redmond Brokerage Company Incorporated did business. At this time BSR's attorney raised the possibility that Harper could be held personally liable for the judgment against Harper Sales in the Jefferson Circuit Court. In January 2001, BSR recorded its judgment against Harper Sales in the Probate Court of Mobile County.
On February 2, 2001, BSR's counsel informed Harper's counsel that BSR believed that Harper was personally liable for the judgment against Harper Sales on the breach-of-contract action and that he could also be personally liable for the breach of the contract between Harper Sales and BSR and for fraudulently misrepresenting the corporate status of Harper Sales. On February 9, 2001, Harper filed a declaratory-judgment action against BSR in the Mobile Circuit Court, seeking to determine the rights, status, and other legal relations between the two parties. Harper asserted that he did not commit fraud by operating as "Harper Sales" or breach the contract between Harper Sales and BSR and that, therefore, he should not be held personally liable for the judgment in the Jefferson Circuit Court against Harper Sales. At the time Harper filed his declaratory-judgment action, no case involving Harper individually and BSR was pending or had been decided.
On March 6, 2001, BSR filed a Rule 60(b), Ala.R.Civ.P., motion in the Jefferson Circuit Court seeking leave to amend its complaint against Harper Sales to add as a defendant Harper in his individual capacity. The amended complaint alleged that Harper had personally breached the contract between BSR and Harper Sales and that he had committed fraud by using the trade name, Harper Sales, rather than the correct corporate name, Redmond Brokerage Company Incorporated, and it sought to pierce the corporate veil. The Jefferson Circuit Court allowed BSR to amend its complaint and purported to enter a summary judgment in favor of BSR on all counts.
In April 2002, more than a year after it sought to amend its complaint in the Jefferson Circuit Court to add Harper as an individual defendant, BSR filed a motion in the Mobile Circuit Court to dismiss Harper's declaratory-judgment action on the grounds that there was no justiciable controversy between the parties and that *Page 223 
Harper did not have standing to bring the action.
On September 6, 2002, this Court reversed the Jefferson Circuit Court's summary judgment entered on BSR's amended complaint. See Harper v.Brown, Stagner, Richardson, Inc., [Ms. 1011109, Sept. 6, 2002]845 So.2d 777 (Ala. 2002) (holding that a plaintiff cannot amend a complaint to add additional defendants once a final judgment has been entered in a case). See also Pratt Capital, Inc. v. Boyett, 840 So.2d 138 (Ala. 2002). On September 26, 2001, BSR filed a new complaint against Harper in the Jefferson Circuit Court alleging the same facts it had alleged in its amended complaint. In October 2002, the Jefferson Circuit Court dismissed BSR's action in accordance with our ruling in Harper v. Brown, Stagner,Richardson, Inc. The Mobile Circuit Court granted BSR's motion to dismiss Harper's declaratory-judgment action on November 12, 2002. Harper timely appealed the Mobile Circuit Court's judgment of dismissal.
 Standard of Review
A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev.,Inc. v. Bentbroooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). We must also view the allegations of the complaint most strongly in the pleader's favor to determine whether it appears the pleader could prove any set of circumstances that would entitle the pleader relief. Nance, 622 So.2d at 299. Furthermore, we will not consider whether the pleader will ultimately prevail on the complaint but whether the pleader may possibly prevail. Id.
For a declaratory-judgment action to withstand a motion to dismiss there must be a bona fide justiciable controversy that should be settled. Anonymous v. Anonymous, 472 So.2d 640, 641 (Ala.Civ.App. 1984); Smithv. Alabama Dry Dock Shipbuilding Co., 309 So.2d 424, 427 (Ala. 1975). The test for the sufficiency of a complaint seeking a declaratory judgment is whether the pleader is entitled to a declaration of rights at all, not whether the pleader will prevail in the declaratory-judgment action. Anonymous, 472 So.2d at 641.
The lack of a justiciable controversy may be raised by either a motion to dismiss or a motion for a summary judgment. Smith, 309 So.2d at 427. See also Rule 12, Ala.R.Civ.P.; Rule 56, Ala.R.Civ.P. However, a motion to dismiss is rarely appropriate in a declaratory-judgment action.Wallace v. Burleson, 361 So.2d 554, 555 (Ala. 1978). If there is a justiciable controversy at the commencement of the declaratory-judgment action, the motion to dismiss should be overruled and a declaration of rights made only after an answer has been submitted and evidence has been presented. Anonymous, 472 So.2d at 641. However, if there is not a justiciable controversy, a motion to dismiss for failure to state a claim should be granted. Curjel v. Ash, 83 So.2d 293, 296 (Ala. 1955).
 Issues and Analysis
The issue before us is whether Harper's declaratory-judgment complaint sufficiently stated a bona fide justiciable controversy so as to withstand BSR's motion to dismiss. Section 6-6-221, Ala. Code 1975, states that the purpose of the Declaratory Judgment Act "is to settle and to afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations and is to be liberally construed and administered." Section 6-6-222, Ala. Code 1975, gives trial courts the "power to declare rights, status, and other legal relations *Page 224 
whether or not further relief is or could be claimed." We also have recognized that one of the purposes of the Declaratory Judgment Act is to render practical help in ending a controversy that has yet to reach thestage where legal relief is immediately available and to enable parties between whom an actual controversy exists or those between whom litigation is inevitable to have the issues speedily determined when a speedy determination would prevent unnecessary injury caused by the delay of ordinary judicial proceedings. Ex parte State ex rel. Lawson,241 Ala. 304, 307, 2 So.2d 765, 767 (1941). Stated another way, declaratory-judgment actions are designed to set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs. Id. See also Berman v. Wreck-A-Pair Bldg. Co.,234 Ala. 293, 175 So. 269, 274 (1937). A declaratory-judgment action requires only that there be a bona fide justiciable controversy. CreolaLand Dev., Inc., 828 So.2d at 288 (citing Gulf South Conference v. Boyd,369 So.2d 553, 557 (Ala. 1979)).
"A controversy is justiciable where present `legal rights are thwarted or affected [so as] to warrant proceedings under the Declaratory Judgment statutes.'" Creola Land Dev., Inc., 828 So.2d at 288 (quoting Town ofWarrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)). We have recognized that a justiciable controversy is one that is "`definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a [judgment].'" MacKenzie v. FirstAlabama Bank, 598 So.2d 1367, 1370 (Ala. 1992) (quoting Copeland v.Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)).
A declaratory-judgment action will not lie for an anticipatory claim.Creola Land Dev., Inc., 828 So.2d at 288 (citing City of Dothan v.Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App. 1999)). However, we have also held that a party should not be forced to wait until the event giving rise to the claim occurs before a court may determine the party's rights and obligations. Creola Land Dev., Inc., 828 So.2d at 288 (citing City of Dothan, supra; Morton v. Allstate Ins. Co.,486 So.2d 1263, 1269 (Ala. 1986)). Furthermore, declaratory relief was intended to be an alternative relief and not to be dependent upon the absence of another adequate remedy. City of Dothan, 738 So.2d at 909 (citing Ex parte Jim Dandy Co., 239 So.2d 545 (Ala 1970)).
The trial court's ruling in a declaratory-judgment action carries no presumption of correctness; we must view the allegations in Harper's complaint as true and view them most strongly in his favor. Creola LandDev., Inc., supra, and Nance, supra. Therefore, we must assume, as Harper alleged, that BSR mentioned Harper's individual liability during his December 2000 deposition and that BSR's attorney told Harper's attorney in February 2001 that BSR believed Harper was personally liable for the judgment against Harper Sales in the Jefferson Circuit Court. Furthermore, we need only determine whether Harper could have possibly prevailed in his declaratory-judgment action. Based upon the specific statements of BSR's attorney and the actions taken by BSR before Harper filed the complaint in his declaratory-judgment action, we hold that Harper could possibly have prevailed on that action.
The sole issue presented in this case is whether a justiciable controversy existed between Harper in his individual capacity, and BSR at the time Harper filed *Page 225 
the declaratory-judgment action. While BSR correctly recognizes that a declaratory-judgment action will not lie for an anticipatory claim, it fails to recognize that one of the purposes of the Declaratory Judgment Act is to enable parties between whom litigation is inevitable to have the issues speedily determined to prevent unnecessary injuries.
The facts in this case indicate that a lawsuit by BSR against Harper was inevitable. Four things happened before Harper's declaratory-judgment action was filed that could lead one to believe that BSR intended to sue Harper in his individual capacity. First, there was the judgment in the Jefferson Circuit Court for BSR in the amount of $113,155.34, against Harper Sales, a company with which Harper was closely affiliated. Second, there was Harper's postjudgment deposition in which BSR's attorney indicated that Harper may be personally liable for the judgment against Harper Sales. Third, there was the rendering of the judgment against Harper Sales in the Probate Court of Mobile County, where Harper resides. Fourth, there was the statement by BSR's attorney to Harper's attorney on February 2, 2001, in which BSR's attorney stated that he thought Harper was personally liable for the judgment against Harper Sales on the breach-of-contract claim. All of these factors, viewed together, indicate that BSR's suing Harper was inevitable.
BSR also asserts that a "justiciable controversy" exists only after a legal action has been filed. However, a controversy is also justiciable where an individual's legal rights are frustrated or affected and a controversy does not require the filing of a legal action. To require the actual filing of a lawsuit before a declaratory-judgment action could be filed would thwart the primary purpose of the Declaratory Judgment Act, which is to afford relief from uncertainty and insecurity with respect to the rights, status, and other legal relations of parties. Furthermore, the Declaratory Judgment Act is to be read liberally, which also militates against the narrow interpretation BSR advocates.
Harper sought to have a court clarify the uncertain issue whether he could be individually liable for the judgment in the Jefferson Circuit Court against Harper Sales. Based upon the relationship and legal history between BSR and Harper Sales and upon Harper's involvement in that relationship, there appeared to be a definite and concrete controversy regarding the legal relationship between BSR and Harper. Additionally, all of the facts giving rise to the claim BSR eventually filed against Harper in September 2001 occurred before the declaratory-judgment action was filed. Harper was not required to wait until BSR sued him to have his rights and obligations determined. Harper's declaratory-judgment action was an alternative relief available to him, it was not dependent upon the absence of another adequate remedy.
Motions to dismiss are rarely appropriate in a declaratory-judgment action; this is one of those cases in which such a motion is not appropriate. Thus, the trial court's dismissal of Harper's declaratory-judgment action was reversible error.
 Conclusion
For these reasons, the trial court erred in dismissing Harper's declaratory-judgment action. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
Moore, C.J., and See, Brown, and Harwood, JJ., concur.
[1] BSR asserts that Rolfe C. Harper III was not the president of Harper Sales because, it says, there was never a corporation by that name. *Page 226