MURDOCK, Justice.
This case involves a custody dispute between N.B. (“the mother”), the biological mother of her daughter A.R.B.-K. (“the child”), both of whom were formerly residents of California, and A.K., a California resident who has no biological relationship to the child. In the summer of 2005, a few weeks after the mother and the child moved to Alabama, A.K. instituted proceedings in the Superior Court of California, County of Sutter (“the California trial court”), seeking a declaration of maternity and visitation rights with the child. While those proceedings were pending, the mother instituted proceedings in the Houston Juvenile Court (“the juvenile court”) seeking a declaration that the mother was the sole parent of the child and that A.K. had no right to visitation. A.K. was not named as a defendant or otherwise made a party to the proceedings in the juvenile court.
*250 In November 2006, the juvenile court entered an order (“the November 2006 order”) granting the mother the relief she requested. Thereafter, A.K. filed a Rule 60(b), Ala. R. Civ. P., motion in the juvenile court, seeking to set aside the November 2006 order. The juvenile court denied A.K.’s motion. A.K. then appealed to the Court of Civil Appeals, which reversed the juvenile court’s order, holding, in part, that the Parental Kidnapping Prevention Act (“the PKPA”), 28 U.S.C. § 17B8A, required the juvenile court to decline to exercise jurisdiction while proceedings were pending in the California trial court. See A.K v. N.B., 66 So.3d 242 (Ala.Civ.App.2008); see generally 28 U.S.C. § 1738A(g)(“A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.”). We granted the mother’s petition for a writ of certiorari.

Facts and Procedural History

The child was conceived by artificial insemination and was born to the mother in April 1999.[1] When the child was born, the mother and A.K. apparently were involved in a lesbian relationship and resided together. On the child’s original birth certificate, the mother, N.B., is described as the child’s mother. No name appears on the birth certificate in the space provided for the child’s father. A.K.’s name does not appear on the birth certificate. A.K.’s last name, however, appears on the birth certificate as part of the hyphenated last name of the child.
The mother and A.K. ended their relationship in March 2004, and the mother and the child moved to a different residence in California than the residence in which A.K. resided.[2]
We note that the mother asserts on appeal that she and A.K. were domestic partners under California law. A January 2005 amendment to California’s domestic-partnership statute expressly authorizes domestic partners to establish a parent-child relationship between the child of either of them and two parents of the same gender. See Cal. Fam.Code §§ 297(b) and 297.5(d); Elisa B. v. Superior Court, 37 Cal.4th 108, 119, 33 Cal.Rptr.3d 46, 53, 117 P.3d 660, 666 (2005). The amendment became effective after the mother and A.K. had ended their relationship, however, and there is no contention that there was an attempt to establish a parent-child relationship between A.K. and the child pursuant to this statute.
At some point, the mother’s parents moved to Alabama. In July 2005, the mother decided to move with the child to Alabama; she brought the child to Alabama; and she found a house in Alabama. In August 2005 she purchased the house, and after purchasing the house, she re *251 turned to California and retrieved her belongings.
According to the complaint, sometime after moving to Alabama in 2005, the mother married. The mother alleges that her husband desires to adopt the child and the child’s older sister.[3]
In August 2005, the Supreme Court of California decided Elisa B. v. Superior Court, supra, which concerned the application of California’s version of the Uniform Parentage Act, Cal. Fam.Code § 7600 et seq. (“the UPA”). Specifically, the Elisa B. court considered whether a lesbian who was a former partner of the biological mother of a child could be a second parent of the child under the following language in Cal. Fam.Code § 7611(d): “A man is presumed to be the natural father of a child if ... [h]e receives the child into his home and openly holds out the child as his natural child.” (Emphasis added.)[4] Notwithstanding the above-emphasized language, the Elisa B. court concluded that § 7611 could be applied to determine maternity, and it stated that it “perceive[d] no reason why both parents of a child cannot be women.” 37 Cal.4th at 119, 33 Cal.Rptr.3d at 53, 117 P.3d at 666 (emphasis added). The court opined
“that a woman who agreed to raise children with her lesbian partner, supported her partner’s artificial insemination using an anonymous donor, and received the resulting twin children into her home and held them out as her own, is the children’s parent under the Uniform Parentage Act and has an obligation to support them.”
37 Cal.4th at 113, 33 Cal.Rptr.3d at 48, 117 P.3d at 662.[5]
In September 2005, A.K. filed a “Petition to Establish Parental Relationship” in the California trial court seeking a declaration that she was a presumed mother of the child under California’s version of the UPA or, in the alternative, that she was a “de facto” parent of the child.[6] The mother was served with A.K.’s petition in November 2005. Thereafter, she retained *252 counsel and initially defended on the merits against A.K.’s petition.
In August 2006, the mother and her California counsel attended a hearing in the California trial court. The parties were ordered to mediation. It is unclear from the record whether the mediation occurred.
On September 8, 2006, the mother filed a “Petition for Temporary Custody” in the juvenile court. The mother alleged that she was the child’s mother, that the child had resided with her since the child’s birth, and “[t]hat there is a non-parent proceeding in the [California trial court] by [A.K.], a [l]esbian who bears no blood relationship to the child, seeking court ordered visitation of the child.” The mother alleged that A.K. had verbally abused the child and had caused her to suffer emotional scarring, that A.K. had threatened to take the child, and that the mother feared that A.K. was going to kidnap the child. The mother also alleged in an exhibit to the petition that A.K. had had no contact with the child for an extended period and that the child had little memory of A.K. The mother requested that the juvenile court “provide a temporary order[,] to be effective until further orders of this Honorable Court,” “ [r]ecognizing the [mother] as the sole parent of the minor child” and “[Restraining [A.K.] or any of her agents from removing the child from the [mother’s] care in the [S]tate of Alabama.” Attached as exhibits to the mother’s petition were, among other things, a copy of the child’s birth certificate, a copy of forms the mother had completed in connection with her artificial-insemination procedure, and a copy of portions of A.K.’s September 2005 petition. The petition filed in the juvenile court does not name A.K. as a defendant. A.K. was not served with process, and A.K. did not appear in the juvenile court proceeding.
On the day the mother filed her petition, the juvenile court entered an ex parte order awarding the mother sole custody of the child pending further orders of the court and restraining A.K., her agents, and law enforcement from removing the child from Alabama pending further orders of the court.
In October 2006, the California trial court entered an order purporting to find that, in addition to the mother, A.K. was also the child’s mother; the California trial court did not award A.K. visitation rights at that time.
In November 2006 the juvenile court conducted an ore tenus proceeding concerning the mother’s petition. The record on appeal contains no transcript of what transpired at the hearing and no summary of the evidence the mother presented at the hearing. A few days later, the juvenile court entered the November 2006 order, which states:
“The [mother] made known that [A.K.], a ‘de facto parent,’ had initiated a proceeding in California in order to obtain visitation with the minor child. The Court finds that a ‘de facto parent’ is not a status or standing recognized in Alabama law and any proceeding based upon this California standing does not oust Alabama on the issue of jurisdiction.... [I]t is concluded that the California court has no subject matter jurisdiction in this matter ab initio, and personal jurisdiction over the minor child, who resided in Alabama at the time the petition of the ‘de facto parent’ was filed in California, lies exclusively in this forum.
“From testimony taken and evidence presented, the Court finds the [mother] is the sole parent of the said minor child and as such has the sole liberty interest in making decisions about the care, custody, and control of said minor child.”
*253 The November 2006 order also declares that A.K. had no visitation rights as to the child.
In December 2006, the California trial court conducted a hearing, which neither the mother nor her California counsel attended. In January 2007, the California trial court entered an order pursuant to California’s version of the UPA requiring that, based on its October 2006 order, A.K. be added as a mother on the child’s birth certificate. See Cal. Fam.Code § 7639. Also, the California trial court set the matter for a hearing to determine A.K.’s visitation rights.
After conducting a hearing on the issue of visitation, which neither the mother nor her California counsel attended, the California trial court entered an order in February 2007 awarding A.K. visitation with the child for a few days in February and a few days in March 2007. It also set the matter for review after the February visitation, but before the March visitation. The record on appeal does not reflect whether A.K. attempted to exercise her visitation rights under the February 2007 order or what further proceedings might have been held in the California trial court after the entry of that order.
In April 2007, A.K. filed a motion in the juvenile court requesting, in effect, that it set aside its November 2006 order based on a lack of subject-matter jurisdiction. The Court of Civil Appeals properly characterized the motion, entitled a “Motion to Dismiss,” as a motion seeking relief under Rule 60(b)(4), Ala. R.Civ. P. See A.K., 66 So.3d at 245 n. 2. In her motion, A.K. contended that under the PKPA and the Uniform Child Custody Jurisdiction Enforcement Act, Ala.Code 1975, § 30-3B-101 et seq. (“the UCCJEA”), only the California trial court could properly exercise jurisdiction as to A.K.’s visitation rights.[7]
After conducting an ore tenus proceeding, the juvenile court entered an order in October 2007 denying A.K.’s motion. The October 2007 order states:
“2. Full faith and credit of any order of the [California trial court] regarding the visitation, custody or child support of the minor child is not honored because those proceedings did not meet provisions of the Parental Kidnapping Prevention Act [28 U.S.C. § 1738A] and therefore, the Uniform Child Custody Jurisdiction Enforcement Act [Ala.Code 1975, § 30-3B-101 et seq.] does not attach.
“3. Under Alabama law or federal law, there is no codified provision that gives to a nonparent in a same-sex relationship the requisite standing to obtain custody or visitation (i.e., parental rights) of the child of a former partner.
“4. The Eleventh Circuit Court of Appeals mandated that ‘[i]f the Legislature does not provide a person with standing to obtain parental rights, the courts must presume the Legislature is acting, or refusing to act, by virtue of its position as representatives of the will of the people.’ Lofton v. Secretary of Dep’t of Children and Family Services, 358 F.3d 804 (11th Cir.[2004]).... Therefore, a Court cannot presume to substitute its will for that of Legislatures representing the will of the people, and [A.K.] lacks standing on which relief may be granted.
*254 “5. Issues regarding the welfare of the minor child remain exclusively within the jurisdiction of this Court, including the establishing of paternity pursuant to the Uniform Parentage Act as presented in Ala.Code § 26-17-10(0.
“6. The best interest of the minor child was not met when the minor child was not present in the state of California, was not made a party to that proceeding and was not represented by a guardian ad litem.”
We also note that at the hearing on A.K.’s motion the juvenile court stated that it had discussed the case with the California trial court, but there is no record concerning the substance of that conversation. See Ala.Code 1975, § 30-3B-110 (discussing communication between courts of different states under the UCCJEA and requiring that a record be made of some types of communications). The juvenile court stated that it did not recall there being any discussion concerning the issue of jurisdiction.
A.K. appealed. The Court of Civil Appeals reversed the decision of the juvenile court. On petition by the mother, we granted the writ of certiorari.

Standard of Review

As the Court of Civil Appeals noted, A.K.’s motion was, in effect, a Rule 60(b)(4), Ala. R. Civ. P., motion for relief from the November 2006 order on the ground that the juvenile court lacked subject-matter jurisdiction.
“ ‘ “The standard of review on appeal from the denial of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process.” ’ ”
Bank of America Corp. v. Edwards, 881 So.2d 403, 405 (Ala.2003) (quoting Image Auto, Inc. v. Mike Kelley Enters., Inc., 823 So.2d 655, 657 (Ala.2001), quoting other cases).

Analysis

The Court of Civil Appeals concluded that the PKPA required the juvenile court not to exercise its jurisdiction, particularly on the issue whether A.K. had visitation rights. The PKPA states:
“A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.”
28 U.S.C. § 1738A(g) (emphasis added).
In this case, the California trial court entered a judgment holding that A.K. was a second mother of the child based upon the holding in Elisa B. that Cal. Fam.Code § 7611(d) could be applicable to a female and the statement in that case that the court “perceived no reason why both parents of a child cannot be women.” The mother argues that substantial issues exist as to whether the California trial court “exercis[ed] jurisdiction' consistently with the provisions of the PKPA.” Issues also are raised that implicate the federal Defense of Marriage Act, 28 U.S.C. § 1738C.
We also note that Art. I, § 36.03, Ala. Const.1901, provides, in part, that “[m]arriage is inherently a unique relationship between a man and a woman” and that “[a] union replicating marriage of or between persons of the same sex in the State of *255 Alabama or in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state....” Section 30-1-19, Ala.Code 1975, also seeks to protect marriage as “inherently a unique relationship between a man and a woman.” Accordingly, questions regarding the judgment of the California trial court and its enforceability in Alabama may exist in light of the unequivocal nature of Alabama public policy on the issue presented by this case.
Nonetheless, none of these questions have been properly presented in a justicia-ble case over which the courts in this State may exercise jurisdiction. As noted, in the action in the juvenile court, the mother attempted to litigate A.K.’s interests, but did not name A.K. as a defendant. In effect, therefore, the mother sought to validate her position in relation to an adverse party without an adversarial proceeding involving that party. As the Supreme Court has stated, “it is elemental that there must be parties before there is a case or controversy.” Ellis v. Dyson, 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975). “[T]he self-interest of the adversaries are relied upon to provide the foundation for sound adjudication.... The most fundamental rule is that there actually be parties.” 13 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3530 (2008).
Like the present case, Gulf Beach Hotel Inc. v. State ex rel. Whetstone, 935 So.2d 1177 (Ala.2006), involved a complaint that sought a declaratory judgment adverse to an entity that was not a party to the action. We held in Gulf Beach Hotel that this Court is not empowered to render a decision under such circumstances, noting that a purpose of the Declaratory Judgment Act is “ ‘to enable parties between whom an actual controversy exists or those between whom litigation is inevitable to have the issue speedily determined....’ ” 935 So.2d at 1183 (quoting Harper v. Brown, Stagner, Richardson, Inc., 873 So.2d 220, 224 (Ala.2003) (emphasis in Gulf Beach Hotel, Inc.)). Although the judgment sought in that case would have been adverse to an entity known as Gulf Beach Hotel, Gulf Beach Hotel was not a party to that action, and we therefore concluded that the complaint in that case did not “allege any controversy between parties whose legal interests [were] adverse.” Id. Cf. Rock Tours, Ltd. v. Does, 507 F.Supp. 63, 66-67 (N.D.Ala.1981) (declining relief on the ground of a lack of justiciability because, “[a]t this point, plaintiffs have no adversaries in this Court”).[8]
In the same way, although the complaint filed in Etowah Baptist Ass’n v. Entrekin, 45 So.3d 1266 (Ala.2010), could have resulted in a judgment adverse to the interest of the Etowah Baptist Association, that association was not a party to that case. Rely *256 ing on Gulf Beach Hotel, Inc., therefore, we concluded that the action at issue there “presented no justiciable controversy and should have been dismissed on that basis.” We vacated the circuit court’s judgment and dismissed the case and the appeal. For the same reason, the judgments of the juvenile court and the Court of Civil Appeals are due to be vacated and the writ of certiorari previously issued in this case is due to be quashed. The Court of Civil Appeals is instructed to vacate its judgment and to dismiss the appeal and to instruct the trial court to vacate its judgment.
WRIT QUASHED WITH INSTRUCTIONS.
STUART, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and LYONS, WOODALL, and SHAW, JJ., concur in the result.

. According to the mother, A.K. has no biological relationship to the child.

. In her appellate brief, the mother asserts that A.K. had no contact with the child and paid no support for the child after she and A.K. ended their relationship. A.K. does not dispute that assertion.
Also, it is undisputed that A.K. did not purport to adopt the child after she was born. We note that in the mother’s response to A.K.’s motion to set aside the November 2006 order, see discussion infra, she alleged that during their relationship she had asked A.K. to adopt the child along with the mother's other daughter (the child’s older sister) when the mother was "facing the possibility of a terminal illness.” The mother alleged that A.K. refused.

. It is not clear from the record whether the California trial court was aware of the mother’s marital status or of her husband’s desire to adopt the mother’s children.

. See generally Cal. Fam.Code § 7650(a) (providing for an action to establish the "mother and child relationship” and stating that, ”[i]n-sofar as practicable, the provisions of this part applicable to the father and child relationship apply”).

. In Elisa B., the El Dorado County district attorney filed a petition to establish the former partner’s status as a parent for purposes of obtaining child support. Unlike the present case, the biological mother in Elisa B., who was receiving financial assistance from the county, did not oppose the petition. The Elisa B. court stated:
”[T]his is not an appropriate action in which to rebut the presumption that Elisa is the twins’ parent with proof that she is not the children’s biological mother because she actively participated in causing the children to be conceived with the understanding that she would raise the children as her own together with the birth mother, she voluntarily accepted the rights and obligations of parenthood after the children were bom, and there are no competing claims to her being the children's second parent.”
37 Cal.4th at 125, 33 Cal.Rptr.3d at 58, 117 P.3d at 670.

.Under California law, the "de facto parenthood doctrine” merely recognizes that "persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding.” In re Kieshia E., 6 Cal.4th 68, 77, 23 Cal.Rptr.2d 775, 781, 859 P.2d 1290, 1296 (1993) (emphasis added). Nothing in the record before us indicates that the proceedings in the California trial court were dependency proceedings.

. Also, in addition to her jurisdictional argument, A.K. argued that the mother’s failure to comply with the pleading requirements of the UCCJEA, which are set forth in Ala.Code 1975, § 30-3B-209, required that the mother's September 2006 petition be dismissed. We note that the UCCJEA pleading requirements are not jurisdictional, see Official Comment to § 30-3B-209; we need not reach the issue whether A.K. made an argument concerning the mother's failure to comply with the pleading requirements that would satisfy her burden of showing that she was entitled to relief pursuant to Rule 60(b).

. “Nor can an action be maintained to procure a judgment which will affect or settle the rights or liabilities of third persons who are not parties to the action.” 1A C.J.S. Actions § 71 (2005); see, e.g., Meeker v. Straat, 38 Mo.App. 239, 243 (1889) ("When a suit is brought with a view of affecting the rights of third parties, and it is apparent that that is its sole object, the suit ceases to be adversary and becomes collusive. No court should lend its aid to such a proceeding, least of all a court of equity.” (cited with approval in State v. Scoville, 197 Ala. 223, 227, 72 So. 546, 548 (1916))); Brewington v. Lowe, 1 Ind. 21, 23-24 (1848) ("The impropriety of [undertaking to settle abstract questions of law] in the present case is manifest from the facts, that the question professed to be litigated, considered with reference either to the point of law attempted to be raised, or the importance of the interests involved, is one of very grave character, and the parties who would be chiefly affected by its decision are not before the Court, and have no opportunity of being heard.”).