MURDOCK, Justice.
John and Judith Valloze and Nationwide Mutual Insurance Company (“Nationwide”); State Farm Mutual Auto Insurance Company (“State Farm”); Freight-liner Custom Chassis Corporation (“Freightliner”); Freightliner, Allison Transmission, Inc. (“Allison Transmission”); and Cummins Atlantic, LLC (“Cummins”), separately petition this Court for writs of mandamus directing the Franklin Circuit Court to dismiss the declaratory-judgment actions filed against them by Tiffin Motor Homes, Inc. (“Tif-fin”). We grant the petitions and issue the writs.

I. Facts and Procedural History

Tiffin manufactures and sells custom-made motor homes. Its principal place of business is Red Bay, Franklin County, Alabama. Before us are four petitions for a writ of mandamus regarding two declaratory-judgment actions filed by Tiffin in the Franklin Circuit Court. The first action concerns a motor home purchased from Tiffin by the Vallozes, case no. CV-12-005 (“the Valloze action”), and the second concerns a motor home purchased from Tiffin by Karen Katnich, case no. CV-12-0026 (“the Katnich action”).
In its complaint in the Valloze action, Tiffin alleged that the Vallozes, who reside in Florida, purchased from Tiffin in Florida a Tiffin Allegro Red motor home that was manufactured by Tiffin in Red Bay. The sales contract between the Vallozes and Tiffin contained a forum-selection clause, which provided that the Vallozes and Tiffin
“agree that exclusive jurisdiction of any proceeding hereunder shall be in the state court of general jurisdiction in and for Franklin County, Alabama, or in the Federal District Court Division that includes Franklin County, Alabama. [The Vallozes] and Tiffin agree to submit themselves, in any legal action or proceeding between them relating to this limited warranty or otherwise to the state or federal court for Franklin County, Alabama, and consent that any action or proceeding shall be brought in such courts, and hereby waive any objection that each may now or hereafter have to the venue of any action or proceeding in any such court.”
*506 On October 1, 2011, in or near the City of Summerton, Clarendon County, South Carolina, the Vallozes’ motor home caught fire and was declared a total loss. Nationwide insured the Vallozes’ motor home, and it paid the Vallozes $212,188.54 plus towing charges for their loss. On October 5, 2011, Nationwide subrogation specialist Kathleen Styer sent Tiffin a letter that stated, in pertinent part:
“Please be advised that Nationwide is the insurance carrier for the above-named insured, who sustained fire damage to his motorhome on the above date of loss. Our preliminary investigation reveals that this fire may have resulted from a defect in the unit[;] therefore we are placing you on notice of a potential claim against you, as well as providing you with the opportunity to inspect the same.
“Please contact the undersigned upon receipt of this notice to advise your intentions regarding attendance of a joint inspection of the motorhome.”
On January 5, 2012, Tiffin filed a complaint in the Franklin Circuit Court against the Vallozes, Nationwide, Freight-liner, Allison Transmission, and Cummins. The complaint described Allison Transmission and Cummins as manufacturers of component parts for Tiffin, “specifically the engine/mechanical portion of the motor home where the fire at issue is alleged to have originated.” The complaint stated that Freightliner sold Tiffin the chassis used in the subject motor home. Tiffin alleged that all of these corporations are foreign corporations that have sufficient minimum contacts with the State of Alabama so that including them as defendants comports with due process. In the complaint, Tiffin noted that “Nationwide has put Tiffin on written notice of a potential claim in this matter arising from the subject fire loss.” As a result of this notice, Tiffin alleged that “[a] real, present justiciable controversy exists between the parties to this action as to the issues of the cause and origin of the subject fire, which party or parties is at fault and liable for the subject fire loss, and the amount of damages arising from said fire loss.” Tif-fin requested that the trial court “take jurisdiction of this matter pursuant to the Alabama Declaratory Judgment Act” and that it “proceed to adjudicate the respective rights and liabilities of all the parties hereto.”
On February 15, 2012, Cummins filed a motion to dismiss the complaint as to it in the Valloze action. On March 15, 2012, the Vallozes and Nationwide filed a motion to dismiss. On the same date, Allison Transmission filed a motion to dismiss. Freight-liner filed a motion to dismiss on March 21, 2012. All of those motions were based on an allegation of a lack of subject-matter jurisdiction on the basis, they asserted, that a “bona fide justiciable controversy” did not exist because no action had been filed by Nationwide against any defendant based on the subject fire loss. On May 9, 2012, the Vallozes and Nationwide filed an ■ amended motion to dismiss in which they argued, in addition to the ground stated in their first motion, that the trial court lacked in personam jurisdiction over the Vallozes because the Vallozes lacked sufficient minimum contacts with the State of Alabama.
Tiffin filed a response to these motions on May 9, 2012,[1] in which it contended that “a present and real controversy clearly exists” in this case because “Nationwide *507 and Valloze would have immediate standing to file suit against [Tiffin] for the subject fire loss, in which case [Tiffin] would have immediate standing to bring in its suppliers.” It argued that “Tiffin does not have to stand by and wait to be sued in order to create a justiciable controversy.”
The trial court held a hearing on the motions on June 7, 2012. The following day the trial court entered orders denying the motions to dismiss filed by Nationwide, the Vallozes, Cummins, and Allison Transmission. On June 21, 2012, the trial court entered an order denying Freightliner’s motion to dismiss. The trial court did not provide reasons for its rulings.
In its complaint in the Katnich action, Tiffin alleged that Karen Katnich purchased a 2011 Tiffin Phaeton motor home from Tiffin in Virginia. On June 1, 2011, in or near the city of Dudley, North Carolina, the motor home caught fire and allegedly suffered a total loss. The sales contract between Tiffin and Katnich contained a forum-selection clause identical to the one in the Vallozes’ sales contract. On January 23, 2012, an attorney for State Farm sent Tiffin a letter that states, in pertinent part:
“This office represents State Farm Mutual Automobile Insurance Company in connection with an incident in which Karen Katnich’s 2011 Phaeton motor home caught fire in Dudley, North Carolina on June 1, 2011. I believe that you are aware of this situation and have been dealing with Rob McGraw, an engineer retained by State Farm, concerning the matter.
“I am writing first to place Tiffin on notice that State Farm intends to commence litigation if this matter cannot be resolved. All of the evidence we have seen shows that the motor home caught fire due to a defect in its manufacture, for which Tiffin would be liable. The motor home has been preserved and can be made available for joint destructive examination.
“However, State Farm believes that this dispute might be best resolved through means other than litigation. At the time of the fire Ms. Katnich’s Phaeton had been driven approximately 1,600 miles. State Farm proposes that Tiffin purchase the vehicle from State Farm, which is now its owner as the motor home was declared a total loss, for the vehicle’s market value immediately before the fire. Alternatively, State Farm would be willing to allow Tiffin to repair the motor home at Tif-fin’s own expense, and to reimburse State Farm the difference in value the motor home would have on the market due to its having been declared a total loss.
“We believe that litigation, of this matter will be expensive and time-consuming for all concerned, and that these alternatives would best serve Tiffin and State Farm. Please consider whether this proposal suits your company’s interests. Otherwise, we will schedule a destructive examination in North Carolina and provide notice to Tiffin and other potentially responsible parties, and commence suit within the next sixty days.”
On February 14, 2012, Tiffin filed a complaint in the Franklin Circuit Court against State Farm, Custom Automated Services, Inc. (“Custom”), Waterway, Inc. (“Waterway”), ABC Warehouse (“ABC”), Maxzone Auto Parts Corporation (“Max-zone”), and Freightliner. Tiffin alleged that Custom, ABC, and Maxzone had furnished component parts that were used in the “tail light apparatus on the moto-rhome, which was then installed on the motorhome by Defendant Waterway. Said tail light apparatus is the location on the motorhome at which the fire is presently *508 believed to have originated.” In the complaint, Tiffin noted that “State Farm has put Tiffin on written notice of a potential claim in this matter arising from the subject fire loss.” As a result of the notice, Tiffin alleged that “[a] real, present justiciable controversy exists between the parties to this action as to the issues of the cause and origin of the subject fire, which party or parties is at fault and liable for the subject fire loss, and the amount of damages arising from said fee loss.” Tif-fin requested that the trial court “take jurisdiction of this matter pursuant to the Alabama Declaratory Judgment Act” and that it “proceed to adjudicate the respective rights and liabilities of all the parties hereto.”
On March 20, 2012, Freightliner filed a motion to dismiss Tiffin’s complaint in the Katnich action. Custom filed a motion to dismiss on March 26, 2012, adopting Freightliner’s motion to dismiss. On April 6, 2012, State Farm filed a motion to dismiss. All of those motions were based on an allegation of a lack of subject-matter jurisdiction because, the movants asserted, a “bona fide justiciable controversy” did not exist since no action had been filed by State Farm against any defendant based on the subject fire loss.
On June 7, 2012, Tiffin filed a response to the motions to dismiss the Katnich action that tracked almost verbatim its response to the motions to dismiss filed in the Valloze action.
The trial court entered an order on June 8, 2012, in the Katnich action in which it denied the defendants’ motions to dismiss. The trial court did not provide reasons for its ruling.
Nationwide and the Vallozes filed a petition for a writ of mandamus with this Court (case no. 1111335) asking that we order the trial court to vacate its order denying their motion to dismiss the complaint filed against them by Tiffin. Freightliner, Allison Transmission, and Cummins also have filed a mandamus petition in the Valloze action (case no. 1111337). State Farm filed a mandamus petition asking that we order the trial court to vacate its order denying its motion to dismiss the complaint filed by Tiffin in the Katnich action (case no. 1111368). Freightliner also has filed a mandamus petition in the Katnich action (case no. 1111378).
On August 9, 2012, Tiffin filed motions in the trial court to dismiss defendants Freightliner, Allison Transmission, and Cummins in the Valloze action and defendants Freightliner, Custom, Waterway, ABC, and Maxzone in the Katnich action. Subsequently, this Court ordered answers and briefs to the four petitions, and we ordered a stay of all proceedings in both actions in the trial court. The trial court granted Tiffin’s motions to dismiss certain defendants in the two actions, but then set aside those orders when it became aware of the stays issued by this Court.

II. Analysis

This Court has stated that “[f]or a declaratory-judgment action to withstand a motion to dismiss there must be a bona fide justiciable controversy that should be settled.” Harper v. Brown, Stagner, Richardson, Inc., 873 So.2d 220, 223 (Ala.2003). “ ‘If no justiciable controversy exists when the suit is commenced, then the court lacks jurisdiction.’ ” Gulf Beach Hotel, Inc. v. State ex rel. Whetstone, 935 So.2d 1177, 1182 (Ala.2006) (quoting Durham v. Community Bank of Marshall County, 584 So.2d 834, 835 (AIa.1991)).[2]
*509 The petitioners argue that no bona fide justiciable controversy exists in these eases because the respective insurance companies, Nationwide and State Farm, have not filed actions against Tiffin for the subject fire losses. Both Nationwide and State Farm note that Tiffin admitted in its complaints that the insurance companies had notified Tiffin of “a potential claim.” Each insurer insists that it has not decided whether to pursue its subrogation rights against Tiffin and other possible responsible parties. The petitioners note that this Court has repeatedly stated that “ ‘ “[d]e-claratory judgment proceedings will not lie for an ‘anticipated controversy.’ ” ’ ” Surles v. City of Ashville, 68 So.3d 89, 93 (Ala.2011) (quoting Bedsole v. Goodloe, 912 So.2d 508, 518 (Ala.2005), quoting in turn Creóla Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002), quoting in turn City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App.1999)).
The petitioners further note that this Court has stated that “ ‘[a] controversy is justiciable where present “legal rights are thwarted or affected [so as] to warrant proceedings under the Declaratory Judgment statutes.” ’ ” Harper, 873 So.2d at 224 (quoting Creóla Land Dev., 828 So.2d at 288, quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)). The petitioners contend that Tiffin’s rights have not been thwarted or affected in any way because, they assert, there is no right to be free from the mere possibility of a lawsuit. According to the petitioners, the fact that Tiffin did not state any injury it had sustained or request any damages underscores the fact that Tiffin’s rights have not been affected.
Tiffin rejoins that all the facts necessary for a dispute already have occurred in each case: the subject motor homes sustained fire damage, the insurers reimbursed their insureds for their losses, investigations have preliminarily concluded that the fires were caused by manufacturing defects, and the insurers informed Tiffin and other potential defendants of their potential subro-gation claims. Tiffin particularly notes that State Farm’s letter explicitly stated that State Farm would commence litigation unless Tiffin agreed to terms offered by State Farm to settle its claim.
Tiffin also argues that the petitioners misunderstand the purpose of a declaratory-judgment action. It contends that
“[i]f litigation must be commenced before a bona fide controversy can be said to exist, then no declaratory judgment [action] could ever be properly filed by a party which was potentially liable for a loss. By definition, all such declaratory judgment actions would be subject to dismissal as either premature or moot. The proposition that no controversy can be considered ripe until a suit is filed is circular and is nowhere supported by case law.”
Tiffin’s brief, p. 9.
It is true that “declaratory-judgment actions are designed to be preemptive,” but this is because they seek to “ ‘set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs.’ ” Carey v. Howard, 950 So.2d 1131, 1134 *510 (Ala.2006) (quoting Harper, 873 So.2d at 224). Tiffin has not highlighted how any of its obligations will be impaired or any of its rights invaded if it cannot obtain declaratory relief. Simply relieving a party of the apprehension of legal action and potential liability is not the purpose of a declaratory-judgment action.
“This Court has recognized that a purpose of the Declaratory Judgment Act, codified at §§ 6-6-220 through -232, Ala.Code 1975, is ‘to enable parties between whom an actual controversy exists or those between whom litigation is inevitable to have the issues speedily determined when a speedy determination would prevent unnecessary injury caused by the delay of ordinary judicial proceedings.’ Harper v. Brown, Stag-ner, Richardson, Inc., 873 So.2d 220, 224 (Ala.2003)....”
Gulf Beach Hotel, 935 So.2d at 1183 (emphasis omitted). Even if we could assume that “litigation is inevitable” between Nationwide and Tiffin or between State Farm and Tiffin, Tiffin has not shown how either insurer’s “delay” in invoking judicial proceedings injures Tiffin. The harm giving rise to the insurers’ subrogation rights— the fire damage to the subject motor homes — has already occurred. Whatever Tiffin’s liability might be as a result of that damage already exists. A “speedy determination” of liability by way of a declaratory-judgment action does nothing to prevent Tiffin from repudiating some obligation on its part or incurring some further liability, nor will it prevent some harm to Tiffin or some invasion of Tiffin’s rights.
Furthermore, it is not a given that “litigation is inevitable” between these parties. No “actual controversy” exists between Nationwide and Tiffin or State Farm and Tiffin because neither insurer has elected to pursue a claim based upon its alleged subrogation rights. It is still possible that both insurers or either insurer could determine that it has no such rights, that for any number of reasons its best interests would not be served pursuing judicial enforcement of whatever rights it might have, or that Tiffin is not a party to be held responsible for the damage that gave rise to those rights. In any event, the subrogation rights belong to Nationwide and State Farm, and Tiffin cannot use a declaratory-judgment action to force the insurers to embark upon a judicial testing of the insurers’ rights and the rights of the owners of the motor homes.
Tiffin claims that the petitioners’ position is not supported in the law, but in fact it is Tiffin’s use of declaratory relief in this context that lacks legal authority. None of the cases cited by Tiffin in support of its position involved the use of a declaratory-judgment action to obtain a determination of potential tort liability. Indeed, our own research has failed to turn up a single Alabama case suggesting that declaratory relief was intended to be used for such a purpose. Although this Court has not had occasion to address the issue, courts in other jurisdictions repeatedly have denied the use of declaratory relief for this purpose. See, e.g., Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167 (7th Cir.1969) (concluding that “to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor would be a perversion of the Declaratory Judgment Act”); United Ins. Co. of America v. Harris, 939 F.Supp. 1527, 1531 (M.D.Ala.1996) (stating that courts “have almost uniformly concluded that tort claims are ill-suited for declaratory relief’); Sun Oil Co. v. Transcontinental Gas Pipe Line Corp., 108 F.Supp. 280, 282 (E.D.Pa.1952) (stating that “it is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability” (footnote *511 omitted)); Ryder Truck Rental, Inc. v. Rollins, 246 Neb. 250, 256, 518 N.W.2d 124, 128 (1994) (observing that “the majority of state jurisdictions which have addressed this question have ... held that a trial court should not exercise jurisdiction over a suit for declaration of nonliability by a potential or, in some instances, actual defendant,” citing several cases in support and noting it found only one state case to the contrary); Averitt v. PriceWaterhouse-Coopers L.L.P., 89 S.W.3d 380, 333-34 (Tex.App.2002) (concluding that “[a] potential defendant may not ... use a declaratory judgment action to determine potential tort liability.... The Act was not intended to deprive a potential tort plaintiff of the right to decide whether, when, and where to sue.”); Township of Ewing v. Trenton, 137 NJ.Eq. 109, 110, 43 A.2d 813, 814 (N.J.Ch.1945) (stating that declaratory relief was not “intended to be utilized defensively to bag in advance an imminent and impending law suit”); and 10B Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2765 (3d ed.1998) (noting that “[t]he courts ... have held that it is not one of the purposes of the declaratory judgments act to enable a prospective negligence action defendant to obtain a declaration of nonliability”).
 We agree with the conclusion of the overwhelming majority of other jurisdictions that declaratory-judgment actions are not intended to be a vehicle for potential tort defendants to obtain a declaration of nonliability. The “plaintiff [has a] right to choose a forum.” Ex parte Integon Corp., 672 So.2d 497, 500 (Ala.1995). Using declaratory relief in the manner employed by Tiffin in these cases deprives tort plaintiffs of this right. It also deprives such plaintiffs, within the confines of the applicable statute of limitations, of the ability to elect the timing for bringing such an action, which may affect a plaintiffs preparation for litigation. Further, such use of declaratory relief “reverse[s] the roles of the parties” in a way that “would jeopardize those procedures which the law has traditionally provided to injured parties by which to seek judicial relief.” Cunningham Bros., 407 F.2d at 1168. In short, declaratory-judgment actions are ill suited to resolving tort claims.

III. Conclusion

Because a bona fide justiciable controversy does not exist in the Valloze action or the Katnich action and because a declaratory-judgment action is not intended to permit a potential tort defendant to obtain a declaration of nonliability, we conclude that the trial court erred in denying the petitioners’ motions to dismiss Tiffin’s complaints.[3] As we noted at the outset of our analysis, “ ‘[i]f no justiciable controversy exists when the suit is commenced, then the court lacks jurisdiction.’ ” Gulf Beach Hotel, 935 So.2d at 1182. Therefore, we direct the Franklin Circuit Court to dismiss the Valloze action and the Katnich action.
1111335 — PETITION WRIT ISSUED. GRANTED;
1111337 — PETITION WRIT ISSUED. GRANTED;
1111368 — PETITION WRIT ISSUED. GRANTED;
1111378 — PETITION WRIT ISSUED. GRANTED;
BOLIN, MAIN, WISE, and BRYAN, JJ., concur.

. Tiffin did not respond to Nationwide and the Vallozes’ contention that the trial court lacked in personam jurisdiction over them.

. "We have construed Art. VI, § 139, Ala. Const, of 1901 (as amended by amend, no. *509 328, § 6.01, vesting the judicial power in the Unified Judicial System), to vest this Court ‘with a limited judicial power that entails the special competence to decide discrete cases and controversies involving particular parties and specific facts.’ Alabama Power Co. v. Citizens of Alabama, 740 So.2d 371, 381 (Ala. 1999). See also Copeland v. Jefferson County, 284 Ala. 558, 226 So.2d 385 (1969) (courts decide only concrete controversies between adverse parties)."
Pharmacia Corp. v. Suggs, 932 So.2d 95, 97 n. 4 (Ala.2005).

. Our conclusion pretermits the need to discuss Nationwide and the Vallozes' argument that the trial court lacks in personam jurisdiction over the Vallozes.