MOORE, Judge.
The East Central Baldwin County Water, Sewer and Fire Protection Authority ("ECBC") appeals from a partial summary judgment entered by the Baldwin Circuit Court ("the trial court") on March 11, 2014, in favor of the Town of Summerdale ("Summerdale"), the City of Robertsdale ("Robertsdale"), and Baldwin County Sewer Services ("BCSS") and the denial of its summary-judgment motion. We dismiss the appeal.
*100 Procedural History
On October 20, 2009, Summerdale filed a complaint seeking a judgment against ECBC and the Baldwin County Commission ("the county commission") declaring "that the amendment to the articles of incorporation of ECBC, which was approved on or about February 19, 2002, and filed for record in the Office of the Judge of Probate of Baldwin County, Alabama, at Instrument No. 650808, on March 28, 2002, is null and void and of no effect"; that the "amendment to [ECBC's] articles of incorporation recorded on October 9, 2008, in the Office of the Judge of Probate of Baldwin County, Alabama, at Instrument No. 1143281, which authorized ECBC to provide sewer service in its service area" is "null and void and of no effect"; "that ECBC breached the franchise agreement with [Summerdale] and has no authority to service the Shadyfield Estates Subdivision or surrounding area"; and that ECBC does not have any authority regarding sewer services in its service area. Robertsdale and BCSS filed complaints containing the same allegations, except they did not allege a breach of the franchise agreement regarding the Shadyfield Estates subdivision.[1]
All parties moved for a summary judgment on the claim regarding the validity of the 2002 amendment to ECBC's articles of incorporation ("the 2002 amendment"), which expanded the geographical service area of ECBC, and the claim regarding the 2008 amendment to ECBC's articles of incorporation ("the 2008 amendment"), which expanded the services that ECBC had authority over in its service area to include sewer services. ECBC argued in its summary-judgment motion, among other things, that Robertsdale, Summerdale, and BCSS lacked standing to challenge the 2002 amendment and the 2008 amendment. Robertsdale, Summerdale, and BCSS asserted (1) that the 2002 amendment was invalid because other public-water systems were adequate to provide water services to the portion of ECBC's service area that was added pursuant to that amendment ("the ECBC 2002 expanded service area") and (2) that the 2008 amendment was invalid because other public-sewer systems were adequate to provide sewer services in ECBC's service area and because ECBC did not actually propose to render sewer services. On June 22, 2012, the trial court entered an order stating:
"Based on the application made by Defendant, ECBC, to the [county commission] containing geographic areas in Robertsdale, Alabama community that were already being served by the City of Robertsdale, the application contained incorrect information. The Court is not in a position to 'carve out' corrections to the application and approval. Therefore, the [county commission's] approval of ECBC's application should be set aside and by this Order is deemed set aside."
After a motion to certify that order as final pursuant to Rule 54(b), Ala. R. Civ. P., and a motion to reconsider was filed by ECBC, the trial court entered another order on September 24, 2012, stating:
"The Court has reviewed the exhibits filed with the parties' motions and responses, including the following:
"1. Paragraph 2 of ECBC 2002 Amendment to Certification of Incorporation states '... to include certain additional territory that is not served *101 currently by any existing public water system....'
"2. Paragraph 3 of ECBC 2002 Amendment to Certification of Incorporation states '... February 19, 2002, the governing body of Baldwin County, Alabama adopted a resolution in which it declared that it had reviewed the contents of said Application and had found and determined as a matter of fact that the statements contained in said application were true.'
"3. [Section] 11-88-5[, Ala.Code 1975,] states[, in pertinent part]:
" '(c) After the adoption by the board of a resolution proposing an amendment to the certificate of incorporation of the authority, the board shall file a written application with the governing body of each county in which any part of the authority's then existing service area lies and with the governing body of each county in which any part of the proposed new territory lies. Such application shall:
" '(1) State, in the event that it is proposed to make provision for the operation of a system or facility not then provided for in the certificate of incorporation of the authority, that the authority proposes to render service from such a system or facility (which shall be named), contain a concise legal description of the area or areas in which the authority proposes to render the service provided for by such system or facility and state that there is no public water system, public sewer system, or public fire protection facility, as the case may be, adequate to serve any area in which it is proposed that the authority will render such service;
" '....
" '(4) Request each governing body with which the application is filed to adopt a resolution declaring that it has reviewed the contents of the application and has found and determined as a matter of fact that the statements contained in the application are true.
" '(d) As promptly as may be practicable after the filing of the said application with any governing body pursuant to the foregoing provisions of subsection (c) of this section, that governing body shall review the said application and shall find and determine whether the statements in the said application are true.'
"4. ECBC has represented to the Court that the Application was the 2002 amendment in proposed form and upon approval, the Amendment was taken to the Judge of Probate for recording.
"5. ECBC has conceded in court that a small number of citizens that were included in the territory covered by the 2002 Amendment were, in fact, at the time actually being served by City of Robertsdale's water system.
"6. Given that the Application to the County was simply the Amendment in proposed form, the Court previously determined that the Application included facts that were not true. As a result, the [county commission] approved an application for expansion of the ECBC territory, based on facts that were not true.
"Based on the evidence and law presented, this Court found in the Summary Judgment that the governing body (Baldwin County) acted upon the assumption that the statements in the application were true when in fact the 2002 application contained statements that were not true and therefore, the approval was not valid. After review of the case and arguments of the attorneys, the *102 Court finds nothing to change its original ruling.
"The Motion to Reconsider the Summary Judgment is DENIED.
"The parties stipulated that this order would apply to Plaintiffs, Town of Summerdale and Baldwin County Sewer Service as well. Therefore, Summary Judgment is GRANTED as to those plaintiffs on the same grounds as stated in the Court's previous Summary Judgment Order as well as set out in this Order.
"Pursuant to [ Ala. R. Civ. P., Rule] 54(b), the Court finds that there is no just reason for delay and expressly directs that the entry of a final judgment be entered in favor of Plaintiffs."
On October 31, 2012, ECBC filed its notice of appeal to this court. This court transferred the appeal to the supreme court for lack of appellate jurisdiction; that court transferred the appeal back to this court, pursuant to § 12-2-7, Ala.Code 1975.
On appeal, this court noted that the trial court had determined that the 2002 amendment was invalid but that it had not addressed the validity of the 2008 amendment. We noted that the construction of the word "adequate" was applicable to the resolution of the validity of both the 2002 amendment and the 2008 amendment, and, although there were other arguments and issues that did not necessarily overlap, we concluded, in an unpublished order, that the issue of statutory construction in the determination of the validity of both amendments " '[is] so closely intertwined' ... 'that separate adjudication would pose an unreasonable risk of inconsistent results.' " East Cent. Baldwin Cnty. Water, Sewer & Fire Prot. Auth. v. Town of Summerdale (No. 2120106, Oct. 23, 2013), 171 So.3d 694 (Ala.Civ.App.2013) (table) (quoting Loachapoka Water Auth., Inc. v. Water Works Bd. Of Auburn, 74 So.3d at 419, 423 (Ala.2011) ). Accordingly, we set aside the trial court's Rule 54(b) certification and dismissed the appeal, without an opinion. Id.
The trial court subsequently entered a judgment clarifying that it had intended for its summary judgment to apply equally to the controversy concerning the 2008 amendment. On April 1, 2014, ECBC filed a "Motion to Reconsider" the judgment; that motion was denied on April 8, 2014. ECBC filed its notice of appeal to this court on May 19, 2014.
Facts
The following facts were set forth in Summerdale's complaint and stipulated to by ECBC:
"ECBC is an Authority organized under Article 1, Chapter 88, Title 11, Code of Ala. (1975), as amended.
"....
"... On or about February 4, 2002, the Board of Directors of ECBC ... adopted a resolution proposing another amendment to the Certificate of Incorporation for the purpose of enlarging ECBC's service area to include certain additional territory for the purpose of providing water and fire protection services.
"... On or about February 5, 2002, the Board of Directors of ECBC filed a written application with [the county commission] describing the proposed amendment and requesting that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application, and after review, had found and determined as a matter of law that the statements contained in the application were true.
"... On or about February 19, 2002, [the county commission] ... adopted a resolution in which it declared that it had reviewed the contents of said application, *103 and after the review, had found and determined as a matter of law, that the statements contained in said application were true.
"... On or about March 28, 2002, an Amendment to the Certificate of Incorporation of ECBC was recorded in the Office of the Judge of Probate of Baldwin County, Alabama, Instrument Number: 650808. Said Amendment added additional territory to ECBC's service area.
"On or about June 10, 2008, the Board of Directors of ECBC adopted a resolution proposing another amendment to its Certificate of Incorporation to make provision for the operation of a sewer system and requested that its name be changed to East Central Baldwin County Water, Sewer and Fire Protection Authority. The request was for all of the lands in its service area except for those areas already being serviced by BCSS....
"... On or about June 18, 2008, the Board of Directors of ECBC filed a written application with [the county commission] which described the proposed amendment to the Certificate of Incorporation and requested that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application and, after review, had found and determined as a matter of law that the statements contained in the application were true.
"... The application states that 'there is no public sewer system adequate to serve the territory in which it is proposed that [ECBC] will render sewer service.'
"... [The county commission] approved the application by adopting a resolution on about September 16, 2008."
Further, the evidentiary materials submitted by the parties indicate the following. David Wilson, the mayor of Summerdale, testified in his deposition that, in 2002, Summerdale did not have definite plans to service the ECBC 2002 expanded service area. He testified that whether Summerdale would do so would depend on need and whether it was economically feasible to do so. He testified that Teresa Lucas, the engineer for ECBC, and Roy Dyess, a director for ECBC, had explained to the Summerdale city council before the adoption of the 2002 amendment that, if Summerdale ever annexed portions of the ECBC 2002 expanded service area into the city, Summerdale would have the option to purchase ECBC's system or lay water lines parallel to ECBC's lines. Wilson testified, and the minutes of the February 11, 2002, Summerdale city council meeting reflect, that he repeated Lucas's and Dyess's explanations at the council meeting and that Lucas had not objected to his statement. He testified that he had since learned that the federal statute under which ECBC has borrowed money prohibits parallel lines. John Resmondo, the manager of the public works for Summerdale, also testified that Summerdale could not afford to run water lines in the ECBC 2002 expanded service area.
Charles Murphy, Robertsdale's mayor, testified in his deposition that he had not known what ECBC's service area was until 2005. He testified that Robertsdale had water lines that were located in the ECBC 2002 expanded service area before the 2002 amendment. Murphy testified that Robertsdale had had over 12 customers in one section of the ECBC 2002 expanded service area since 1994 or 1995, over 6 customers in another section since before 1994, about 10 customers in another section, and over 20 in another section. He testified that, at the time of the 2002 amendment, Robertsdale did not have definitive *104 plans to offer further water services in the ECBC 2002 expanded service area. Since that time, Robertsdale had sought to purchase a portion of ECBC's service area. He testified that, at the time of his deposition, Robertsdale did not intend to provide services in the northern portion of the ECBC 2002 expanded service area unless it could make money there and that he did not expect that to happen in the foreseeable future. He testified, however, that if there were sufficient customers to pay for the cost of the expansion to get the desired rate of return, Robertsdale's system would have adequate capacity to provide water services in the northern portion of the ECBC 2002 expanded service area.
Murphy testified that ECBC's authority to provide sewer services in its service area would pose a problem because ECBC would try to charge a franchise fee if Robertsdale were to seek to install sewer lines in the ECBC 2002 expanded service area.
Murphy testified in his affidavit that "ECBC's service area has been extended to include approximately one third (1/3) of Baldwin County, including the logical and abutting areas of [Robertsdale] and other service providers." He further testified that, before the 2002 proposed expansion of the water-service area by ECBC, Robertsdale's "water capacity and service capability quadrupled ECBC's existing water capacity and service capability." He testified that, "[p]rior to the 2002 expansion request by ECBC, no one from ECBC ... came before a Robertsdale work session or city council meeting with any details of a proposed water expansion area or a map outlining their intentions." He testified that, had he known the specifics of the proposed plan, he would have requested that the Robertsdale city council oppose the expansion. He testified that "Lucas[ ] met with [him] and explained that she worked for ECBC and they were considering putting some water somewhere east of Robertsdale, but [that she had] never produced a map with these exact details. The primary purpose of the meeting ... was that she wanted to introduce herself ... to solicit work from the City Of Robertsdale." He testified that the first he had learned of the details of the 2002 expansion was in 2005 when he discovered that an area that Robertsdale was trying to provide service to was part of ECBC's service area. He testified that the ECBC 2002 expanded service area included Robertsdale's existing sewer-treatment plant where Robertsdale was already providing water. He testified that, "[p]rior to the 2002 expansion request by ECBC, ... Robertsdale was ready and adequate to provide water service to the [ECBC 2002 expanded service area]." Murphy also testified that, before the 2008 amendment, Robertsdale's "sewer capacity and service capability dwarfed ECBC's existing sewer capacity and service capability ... [and] was ready and adequate to provide sewer service to the area encompassed by ECBC."
Wilson also testified that Summerdale had entered into an agreement on July 27, 2007, with BCSS to provide sewer services. Murphy testified that he did not want ECBC to have sewer authority because, he said, if Robertsdale were to annex any of the areas in the ECBC service area, Robertsdale would have to pay ECBC a franchise fee. Charles Hall, the manager for ECBC, testified that ECBC had borrowed money from the United States Department of Agriculture to construct its water system in the ECBC 2002 expanded service area. Hall testified that ECBC has the capacity to provide water services, but not sewer services, throughout its service area. He testified that ECBC was servicing all the parts of its service area where people had requested water services except a few *105 places where it had not been feasible. He testified that ECBC has a protected service area regarding water services due to its agreement with the United States Department of Agriculture.
Hall testified that, in 2005, ECBC had contracted with Alabama Utilities Services, Inc. ("AUS"), to provide sewer services in ECBC's service area but that that contract had expired. Hall testified that, on January 1, 2009, ECBC had entered into a franchise agreement with Integra Water Baldwin, LLC, to provide sewer services in ECBC's service area and that that franchise agreement was still in effect. He testified that, before the 2008 amendment, ECBC did not have an agreement with any provider to provide sewer services.
Lucas testified by deposition that Wilson had dropped his objection to the 2002 amendment at the public hearing before the Summerdale city council. She testified that Summerdale and Robertsdale had been aware of the 2002 amendment and that neither city could adequately provide water for the ECBC 2002 expanded service area because none of them were providing it at the time. Lucas testified that she had met with Murphy before the 2002 amendment and that he had said that Robertsdale could not provide water services to the ECBC 2002 expanded service area. She testified that she had assured Murphy that the expansion would not affect Robertsdale's ability to annex parts of that area and that Murphy, therefore, had had no concerns about the amendment. Lucas testified that there was no demand for sewer services in ECBC's service area.
Lucas testified in her deposition that the 2002 expansion had taken ECBC's service area up to the city limits of Summerdale and Robertsdale, where those cities stopped providing water and sewer services. Lucas testified that, in July 2003, ECBC had obtained a "Rural Utility Service Loan" from the United States Department of Agriculture in the amount of $3,037,500, and a grant in the amount of $2,362,500 for part of the 2002 expansion. She testified that she had known that no city would be able to lay a parallel water line once ECBC obtained a federal loan for its water system.
In 2008, Robertsdale, Summerdale, and BCSS objected to the county commission's approving ECBC's application regarding the 2008 amendment. Two work sessions and one public hearing were held concerning the application. The minutes from those meetings reflect that Bob Willis, from ECBC, represented to the county commission that ECBC did not intend to actually provide sewer services in its service area and that ECBC did not have any definite plans for contracting to provide sewer services. Willis stated that ECBC did not intend to stop providers from servicing ECBC's service area but that he wanted providers to come to ECBC for oversight so that ECBC could realize revenue. Willis noted that ECBC had not sought to provide sewer services in the few places in its service area where there were existing sewer lines from other providers. Dan Blackburn, a representative of BCSS, stated that BCSS and some municipalities have sewer lines in the ECBC service area and that BCSS had the ability at that time to expand sewer services throughout ECBC's service area. Larry Sutley, a representative of Summerdale, stated that Summerdale and all the other surrounding cities had plans to expand sewer services into the ECBC service area. A representative of Robertsdale stated that Robertsdale had the same plan that ECBC had-if there is a need, it would provide sewer services in the ECBC service area. He stated that Robertsdale had the capability to do so.
*106 On November 17, 2008, ECBC demanded that BCSS "submit to it any and all plans and specifications concerning the placement and construction of sewer lines for which it has received permitting from Baldwin County and, further, that no action be taken by BCSS to construct or put said lines into place until ECBC has had an opportunity to review said plans and specifications." It also requested that "any plans for the placement or construction of sewer lines and/or sewer systems within ECBC's service area be submitted to it prior to making permit application with Baldwin County." Finally, it requested that no "permits for any portion of a sewer system to be located in our service area be issued by the [county commission] without prior approval from ECBC."
ECBC stipulated: "It is undisputed that at the time ECBC made application to [the county commission] in 2002 to expand its service area that there were a number of small pockets where the City of Robertsdale actually had some water lines in the ground. The total number of customers was probably less than twenty-five (25)."
Discussion
On appeal, ECBC argues: (1) that the 2002 amendment and the 2008 amendment are not subject to judicial review; (2) that, if the amendments are subject to judicial review, the county commission's actions are presumed to be valid unless they were arbitrary and capricious; (3) that Summerdale and Robertsdale are estopped to challenge the validity of the 2002 amendment; (4) that there is not a sufficient controversy to give rise to subject-matter jurisdiction; and (5) that § 11-88-5(d), Ala.Code 1975, is ambiguous with regard to the meaning of "adequate" and that the trial court's construction of that term was erroneous.
Because ECBC's argument regarding whether there was a sufficient controversy in this case is an issue of subject-matter jurisdiction, we will address it first.
The 2002 Amendment
Specifically, ECBC argues that Summerdale, Robertsdale, and BCSS have not been injured by the 2002 amendment. "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999).
" 'To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala.1996). 'Standing ... turns on "whether the party has been injured in fact and whether the injury is to a legally protected right.' " 2018 Rainbow Drive, 740 So.2d at 1027 (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala.2003) ('The power of the judiciary ... is "the power to declare finally the rights of the parties, in a particular case or controversy ...." ' (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala.1998) )); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ('[T]he law of Art. III standing is built on a single *107 basic idea-the idea of separation of powers.').
"In Jones v. Black, 48 Ala. 540 (1872), this Court first articulated a test for determining whether a party has the necessary standing to challenge the constitutionality of an act of the Legislature. We stated then:
" 'A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is, or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown.'
" 48 Ala. at 543."
Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256-57 (Ala.2004).
"Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' "
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnote and citations omitted).
Murphy, the mayor of Robertsdale, testified that Robertsdale had water lines in the ECBC 2002 expanded service area before the 2002 amendment was adopted. He testified that Robertsdale had had over 12 customers in one section of the ECBC 2002 expanded service area since 1994 or 1995, over 6 customers in another section since before 1994, about 10 customers in another section, and over 20 in another section. He testified that, at the time of the adoption of the 2002 amendment, Robertsdale did not have plans to offer further water services in the ECBC 2002 expanded service area. Wilson, the mayor of Summerdale, testified in his deposition that, in 2002, Summerdale did not have definite plans to service the ECBC 2002 expanded service area. John Resmondo, the manager of the public works for Summerdale, also testified that Summerdale could not afford to run water lines in the ECBC 2002 expanded service area. Finally, BCSS does not provide water services at all.
Based on the foregoing, we conclude that neither Robertsdale, Summerdale, nor BCSS has shown the existence of an " 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (footnote and citations omitted). Robertsdale and Summerdale both seek redress based on the fact that they might at some point in the future want to provide water services to the 2002 ECBC expanded service area. That injury is clearly hypothetical in nature. We also note that there is no indication that ECBC has sought to prevent Robertsdale from providing water services to its preexisting customers in the 2002 ECBC expanded service area.[2]
*108 Therefore, we conclude that Robertsdale, Summerdale, and BCSS lacked standing to challenge the 2002 amendment and, thus, that the trial court should have dismissed their complaints to the extent that they challenged that amendment. Property at 2018 Rainbow Drive, 740 So.2d at 1029.
The 2008 Amendment
With regard to the 2008 amendment, we note that Murphy testified that Robertsdale had opposed the 2008 amendment because he could "see that at some point in time in the future that [it] would present a conflict for my City" and that Robertsdale's plan was that, if there is a need for sewer services in ECBC's service area, it would expand sewer services to that area. Summerdale admits in its brief to this court that it does not have a sewer system, having sold its system and all its assets to BCSS. Therefore, we conclude, like we did with regard to the 2002 amendment, that Robertsdale and Summerdale have not shown the existence of an " 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (footnote and citations omitted).
With regard to BCSS, we recognize that it does have plans to expand its sewer services in the ECBC service area. However, BCSS still must show that the 2008 amendment has affected it in that regard. Alabama Code 1975, § 11-50-1.1, provides:
"Municipalities are hereby prohibited from acquiring, or duplicating any services of, any waterworks system or any part thereof, operated by a corporation or association which has been organized under Sections 10-4-190 through 10-4-194, Sections 11-88-1 through 11-88-21, Sections 11-88-40 through 11-88-111, or Sections 11-89-1 through 11-89-19, [Ala.Code 1975,] without the consent of a majority of the members of the governing board of said corporation or association."
We note, however, that nothing in the record indicates that BCSS is a municipality or an agent for a municipality, see City of Wetumpka v. Central Elmore Water Auth. , 703 So.2d 907, 914 (Ala.1997). Thus, BCSS is not limited by § 11-50-1.1. Further, although 7 U.S.C. § 1926(b) provides limitations regarding competition with associations such as ECBC that have obtained a loan from the United States Department of Agriculture, the record indicates that ECBC has not obtained such a loan to provide sewer services and there is nothing in the record to indicate that it has any plans to do so. Therefore, we cannot conclude that BCSS has been limited or will certainly be limited in expanding its sewer services in the ECBC service area and, thus, has sustained an injury in fact.
Based on the foregoing, we conclude that Robertsdale, Summerdale, and BCSS lacked standing to challenge the 2008 amendment, and, thus, the trial court should have dismissed their complaints to the extent that they challenged that amendment. Property at 2018 Rainbow Drive, 740 So.2d at 1029.
Conclusion
Because Robertsdale, Summerdale, and BCSS lacked standing to seek redress with *109 regard to the approval of the 2002 amendment and the 2008 amendment, the trial court lacked subject-matter jurisdiction over those claims and had no alternative but to dismiss the complaints as to those claims. Therefore, the partial summary judgment entered by the trial court was void. See, e.g., Carey v. Howard , 950 So.2d 1131, 1137 (Ala.2006). A void judgment will not support an appeal. Id. at 1137-38. Therefore, we dismiss the appeal, albeit with instructions to the trial court to set aside its void judgment and to dismiss the complaints to the extent that they challenge the 2002 amendment and the 2008 amendment.
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMAS and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.

Robertsdale's and BCSS's complaints are not in the record; however, the briefs filed with this court represent that the allegations in those complaints were the same as those in Summerdale's complaint except that they did not include the allegation regarding the breach of the franchise agreement.

Additionally, ECBC's acquisition of a loan through the United States Department of Agriculture had no effect on preexisting services provided by Robertsdale. See, e.g., Public Water Supply Dist. No. 3 of Laclede Cnty. v. City of Lebanon , 605 F.3d 511, 519 (8th Cir.2010) ("[T]he City's continuing to provide service to customers it began serving before the District obtained the [United States Department of Agriculture] loan does not violate [7 U.S.C.] § 1926(b).").